IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CQ, INC.,

Plaintiff,

-vs-

TXU MINING COMPANY, L.P., TXU, CORPORPORATION,

Defendant.

Civil Action No. 05-1230

AMBROSE, Chief District Judge.

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

This civil action, over which jurisdiction is based on diversity of citizenship, arises out of the purported contractual relationship between Plaintiff CQ, Inc., a designer, developer, owner, and operator of coal-cleaning facilities, and Defendants, who are involved in the coal and lignite mining industry. Defendants are each alleged to be related to a joint venture titled TXU Mining/Capgemini, and will be referred to collectively.[1]

Defendants TXU Corp. and TXU Mining Co., L.P., have moved to dismiss on

[1]Defendant TXU Corp. is alleged to be a holding company that owns and controls Defendant TXU Mining Company ("TXU Defendants"). Defendant Capgemini Energy ("CGE"), LP allegedly provides outsourcing services for TXU Corp., which owns a percentage of CGE. CGE is also alleged to be part of a joint venture with the TXU defendants in TXU Mining/Capgemini. The Request for Bid at issue in this litigation was issued by TXU Mining/Capgemini.

personal jurisdiction or venue grounds, or, in the alternative, to transfer this matter to a proper venue. Defendant Capgemini Energy, L.P. has filed a similar Motion. For the following reasons, I will grant Defendants' Motions, and transfer the case to the United States District Court for the Northern District of Texas, Dallas division.[2]

**OPINION**

**I. STANDARD OF REVIEW**

Defendants have brought their motions to dismiss, or in the alternative, to transfer, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). The venue statute reads, in pertinent part, as follows:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Under Fed. R. Civ. P. 12(b)(3), a defendant bears the burden of showing that venue is improper. Myers v. Am. Dental Ass'n, 695 F.2d 716, 724 (3d Cir. 1982). When reviewing a motion to dismiss for improper venue, a court must accept the plaintiff's allegations as true and must draw all reasonable inferences and resolve all factual disputes in the plaintiff's favor. See Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

[2]Typically, issues of personal jurisdiction are to be addressed preferentially. However, "[i]f there exists 'sound prudential justification'," a court may review venue before personal jurisdiction. Fortay v. University of Miami, 1994 U.S. Dist. LEXIS 1865. In this case, reviewing personal jurisdiction first would require a close and involved factual analysis, which would be rendered useless in light of my venue analysis. Therefore, judicial efficiency is served by a reviewing venue first. Moreover, because of my conclusions today, I need not reach the parties' jurisdictional arguments.

## II. AMENDED AND RESTATED COMPLAINT

Plaintiff alleges that in November of 2004, Defendants issued a request for bids to, inter alia, design, build, own, and operate a lignite cleaning plant at Defendants' Texas facility, and also form a five-year alliance involving the implementation and development of clean coal processes for Defendants' lignite facilities. Plaintiff further avers that the bid documents contemplated that each party would be required to execute a confidentiality agreement in connection with the bid proposals, because of the necessity for prospective bidders to share confidential information. At a meeting held prior to bid submissions, Defendants presented such an agreement to Plaintiff.

Plaintiff alleges that in December of 2004, it responded to Defendants' Request for Bid, with a detailed bid. Plaintiff also alleges that in its purported offer, it "accepted all the contract terms in the Request for Bid."[3] The following clause was part of the "Standard Terms and Conditions" of the Request for Bid:

> This Agreement will be governed by, construed and enforced in accordance with the laws of the State of Texas. The parties agree that the proper venue and jurisdiction for any cause of action relating to the Agreement will be in Dallas County, Texas.[4]

In its detailed bid, Plaintiff included an analysis of the methods and technologies that it proposed to use for cleaning lignite. Subsequently, Plaintiff

---

[3]Plaintiff further alleges that when it accepted all such contract terms, it "included clarifications to the Standard Terms and Conditions in the Bid documents." Those clarifications, however, are not claimed to affect the forum selection clause or to be at issue here.

[4]For those navigating this matter on CM/ECF, the document containing the subject clause is attached to Plaintiff's Amended and Restated Complaint (Docket No. 31) as Exhibit A, part 2.

proffered a revised offer. Plaintiff avers that Defendants accepted its offer, but later rejected Plaintiff's involvement. Plaintiff further alleges that during the course of events, Defendants acquired and then misused and improperly disclosed Plaintiff's confidential information.

Plaintiff then filed this action, alleging various wrongful acts on Defendants' part. Count I alleges breach of the parties' agreement to enter into an alliance under the terms and conditions set forth in Plaintiff's Bid documents. Count II alleges breach of the parties' confidentiality agreement. Count III sounds in quantum meruit, regarding the value of the benefit conferred on Defendants by the use of Plaintiff's knowledge and expertise. Count IV alleges fraud in inducing Plaintiff to disclose confidential information, after Plaintiff believed that it had been selected as an alliance partner. Count V alleges that the defendants conspired to use and misappropriate Plaintiff's knowledge and expertise, and to deprive Plaintiff of the benefit of its bargain. Count VI seeks injunctive relief regarding use of Plaintiff's confidential information. Count VII claims breach of fiduciary duties in connection with the purported alliance, as a joint venture. Finally, Count VII, theft of trade secrets, rests on Defendants' use of Plaintiff's confidential information.

## III. VENUE SELECTION CLAUSE

"In federal court, the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

> [T]he rule is that a forum selection clause is presumptively valid and will be enforced by the forum unless the party

> objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983).

The party opposing a forum selection clause bears a "heavy burden" of showing that the clause should not be enforced. See, e.g., MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 Fed. Appx. 844, 848 (3d Cir. 2003); Provident Mutual Life Ins. Co. v. Bickerstaff, 818 F. Supp. 116, 118 (E.D. Pa. 1993).

Plaintiff does not argue that the clause is unenforceable or unreasonable, as discussed in Coastal Steel; nor does it argue that venue would be improper in Dallas County, Texas. It does, however, argue that the selection clause is inapplicable to this particular case, for three reasons: First, because this clause is permissive, rather than mandatory; second, because most of Plaintiff's causes of action are outside of the scope of the clause; and third, because Defendants cannot simultaneously deny the existence of a contract and rely on a clause contained therein. I will address each of these contentions in turn.

**A. Mandatory v. Permissive**

First, I address Plaintiff's assertion that the forum selection clause is permissive.

The contract language defining "the" proper venue denotes the existence of a single proper venue, to the exclusion of others. Cf., Woolf v. Mary Kay Inc., 176 F.

Supp. 2d 642, 645 (N.D. Tex. 2001). This is opposed, for example, to other commonly used contractual language, all of which establish the propriety of a particular venue, without purporting to preclude any other: "forum X is [or shall be, etc.] a proper venue"; "venue is [or shall be, etc.] proper in forum X"; or the parties "consent to suit in forum X."[5] Each of these makes clear that forum X is acceptable and proper, but does not render alternate venues improper. Notably, this list of examples covers the clauses at issue in every case that Plaintiff offers on this point. Unlike these examples, the present provision denotes exclusivity and singularity. The term "the," immediately preceding identification of the "proper" forum, and taken with the phrase "any cause of action," clearly manifests an intent to render venue both compulsory and exclusive. Words not chosen - i.e., the words "exclusive" or "shall"– do not alter the plain meaning of the words actually employed. This provision is neither ambiguous nor permissive in nature.

**B. <u>Scope of Clause</u>**

Next, I address Plaintiff's argument that even if the forum selection clause is mandatory, the bulk of the Amended and Restated Complaint falls outside of its scope.

Here, the scope of the clause encompasses "any cause of action relating to the Agreement." The phrase "'relating to'...is broad enough to encompass claims not explicitly grounded in the Agreement." <u>John Wyeth & Brother v. CIGNA Int'l Corp.</u>,

---

[5]This includes <u>Koresko v. Nationwide Life Ins. Co.</u>, 2005 U.S. Dist. LEXIS 31575 (E.D. Pa. Dec. 6, 2005), in which the contract stated, "the parties agree to venue in" a particular forum.

No. 95-4751, 1996 U.S. Dist. LEXIS 8907, at *9 (E.D. Pa. June 26, 1996).[6] Such language, therefore, may be read to cover "all causes of actions arising directly or indirectly from the business relationship evidenced by the contract." Oak Sys. v. Francotyp-Postalia, Inc., No. 01-2794, 2002 U.S. Dist. LEXIS 2213 (E.D. Pa. Feb. 5, 2002). Accordingly, "[p]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." Crescent International, Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir. 1988). Instead, if a non-contractual claim has its factual basis in the contractual business relationship between the parties, then it may be deemed to "relate to" the parties' contract. John Wyeth, 1996 U.S. Dist. LEXIS 8907, at *8.

Plaintiff concedes that Count I is covered by the clause. Each of the other counts, however, likewise "relate to" the parties' alleged contract. The confidentiality agreement arose out of, and was inextricably intertwined with, the parties' alleged agreement. The confidentiality agreement was, clearly, intended to enable and be integral to the bid and proposal process. Similarly, the disclosure of confidential or proprietary information was likewise integral to the contract and related processes. All of Plaintiff's claims in that regard relate, at least indirectly, to the parties' business relationship evidenced by the contract. Indeed, it would be almost impossible to factually disentangle any of Plaintiff's non-contractual claims,

---

[6]In Wyeth, the District court discussed and quoted Anselmo v. Univision Station Group, Inc., 1993 U.S. Dist. LEXIS 428, at *2 (S.D.N.Y. Jan. 15, 1993).

or its claims based on the confidentiality agreement, from its alleged contractual business relationship with Defendants. Therefore, all of Plaintiff's claims are closely related to the purported contract, and fall within the scope of the forum selection clause.

**C. Defendant's Conflicting Positions**

Finally, I note Plaintiff's argument based on the seeming inconsistency of Defendants' positions.

The TXU Defendants completely deny the existence of a contract, stating, "[t]here simply was no contract, oral or written, between the parties." At the same time, however, Defendants seek to enforce the forum selection clause present in the contract urged by Plaintiff. Plaintiff argues that Defendant cannot take both positions. "It would appear quite illogical for this court to enforce the clause while Defendant denies the existence of the contract; and yet, the outcome would be equally senseless were this court to allow Plaintiff to maintain his breach of contract action here in the face of an unambiguous forum-selection clause." Azadi v. Berry Network, 858 F. Supp. 83, 84 (E.D. Tex. 1994). The Court in Azadi was not, ultimately, required to substantively address this issue. Therefore, other than providing an apt description of the "metaphysical conundrum," Azadi is not of any particular assistance in its resolution.

Having considered the conundrum from all angles, I conclude that the situation is less thorny than it first appears.

Venue, by its terms, defines where an action "may...be brought." 28 U.S.C.S.

§ 1391. In addition, a challenge to venue should be addressed in a pre-answer motion. See Fed. R. Civ. P. 12(b)(3). As demonstrated by these provisions, the relevance of a venue inquiry is concentrated at the beginning of the litigation process. Moreover, prior to filing a responsive pleading to a complaint, a defendant need not admit or deny any facts, or take any position on the alleged existence of a contract. Therefore, the rules do not bar a defendant in a breach of contract action from moving to dismiss the action based on a forum selection clause in the contract, and then later filing an answer denying the validity of that same contract. That the present Defendants chose to interpose unnecessary factual denials at this early stage in the litigation does not render those denials outcome determinative. This is particularly true where Plaintiff has chosen to bring suit on a contract, and essentially admits that the contract contains a valid and enforceable venue provision. Although I understand the intrinsic appeal of an estoppel-type argument against Defendant, I cannot accept it in this case.

**D. Transfer**

Section 1406(a) permits me to transfer, rather than dismiss, a matter in which venue is improper. "A Court transferring venue under § 1406 must simply determine a venue in which the action originally could have been brought that serves the interest of justice." de Rojas v. Trans States Airlines, Inc., 204 F.R.D. 265, 269 (D.N.J. 2001). Whether I have personal jurisdiction over Defendants does not affect my ability to transfer the case. Wojtunik v. Kealy, No.02-8410, 2003 U.S. Dist. LEXIS 14734, at *10 (E.D.Pa. Aug. 26, 2003).

I have already concluded that venue is improper in this District. Moreover, transfer would be in the interest of justice, as it would expedite the resolution of Plaintiff's charges and dispense with various technicalities associated with refiling. There is no dispute that the case could have been brought in the United States District Court for the Northern District of Texas. Therefore, I will transfer the action to that forum.

**CONCLUSION**

In sum, venue is improper in this district as a result of the forum selection clause present in the contract that is the subject of this litigation. In the interest of justice, I will transfer the matter to the appropriate court.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CQ, INC., )
)
Plaintiff, )
)
-vs- )
Civil Action No. 05-1230
TXU MINING COMPANY, L.P., TXU, )
CORPORPORATION, )
)
Defendant. )

AMBROSE, Chief District Judge.

**ORDER OF COURT**

AND NOW, this **3rd** day of February, 2006, after careful consideration and for the following reasons, it is ORDERED that Defendants' Motions to Dismiss (Docket Nos. 11 and 30) are GRANTED, to the extent stated herein, such that this matter shall be transferred to the United States District Court for the Northern District of Texas, Dallas division, for further proceedings. Following transfer, the clerk shall mark this matter CLOSED.

BY THE COURT:

/S/ Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge